John P. Schuster and Robert T. Kelly, Trustee, v. George Elsner et al.
Etna Wilkey, v. George Elsner et al.
Andrew A. Scowley, Petitioner and Plaintiff in Error, v. Etna Wilkey et al., Respondents and Defendants in Error.

Gen. No. 7,825.

Opinion filed September 28, 1928.

H. C. RUMERY and R. A. GREEN, for plaintiff in error.

KENT J. OWENS and BARR & BARR, for Public Service Company of Northern Illinois and John H. Gulick, defendants in error.

WILSON, McILVAINE, HALE & TEMPLETON, for Chicago Title & Trust Company, Gerald V. Cleary and Leo J. Corboy, defendants in error; J. F. DAMMANN, JR., of counsel.

MR. JUSTICE JETT delivered the opinion of the court.

On July 31, 1922, John P. Schuster and Robert T. Kelly, trustee, filed their bill in the circuit court of Will county to foreclose a trust deed against Etna Wilkey and others. The mortgaged lands and prem-ises described in the trust deed and bill filed to fore-close the same are located in Will county and the title of record at the time of filing the bill was in the name of Etna Wilkey.

Frank C. Patten and Charles T. Knapp were alleged in said bill to have some interest in the mortgaged premises and were made parties to the bill. An affi-davit of nonresidence was made by John P. Schuster and filed stating that the addresses of said Etna Wilkey, Charles T. Knapp and Frank C. Patten were unknown; that after diligent inquiry made by the af-fiant their respective residences could not be ascer-tained, and that affiant was unable to secure any in-formation in relation thereto; that the last known residence of each of said defendants was room 610, 17 North LaSalle Street, Chicago, which place said de-

fendants left about two months ago (meaning prior to the time of the filing of the affidavit), since which time affiant has been unable to obtain any information in relation to them.

Notice by publication was made in accordance with the provisions of the Chancery Act, Cahill's St. ch. 22, and the clerk of the circuit court of Will county mailed copies thereof to each of said defendants, namely, to Etna Wilkey, Frank C. Patten and Charles T. Knapp, addressed to room 610, 17 North LaSalle Street, Chicago. Neither of said defendants appeared and default was entered against each of them and a decree of foreclosure *pro confesso* was rendered.

A sale of the lands was had pursuant to the decree and the premises were bid in by John P. Schuster and he afterwards conveyed a part of them to Harry C. Stigall, and still another portion to John H. Gulick, for the Public Service Company of Northern Illinois.

It appears that one Cleary, Corboy and the Chicago Title and Trust Company acquired some interest in the premises from Stigall *pendente lite*. The record discloses that Andrew A. Scowley obtained a deed from Etna Wilkey on April 18, 1923, about four months after the decree for foreclosure was entered. At the time Scowley obtained the deed he knew nothing of the foreclosure proceedings and it is very doubtful if Etna Wilkey knew anything about them. It appears that Etna Wilkey was a stenographer employed by Charles T. Knapp whose office was at 38 South Dearborn Street, Chicago. Charles T. Knapp and Frank C. Patten occasionally had real estate deals together and Etna Wilkey did the necessary stenographic work, sometimes going to Patten's office which was located at room 610, 17 North LaSalle Street, to perform such services. Etna Wilkey had no real interest in the mortgaged premises. The title it appears was taken in her name for the convenience of Knapp and Patten and the deed made by her to Andrew A. Scowley was

made at the request of Knapp and Patten. The evidence discloses that 17 North LaSalle Street is an office building and not a residence and that neither Etna Wilkey, Charles T. Knapp nor Frank C. Patten ever resided at either of the above named addresses. It is further shown that on December 24, 1925, Etna Wilkey filed a petition in the office of the clerk of the circuit court of Will county for leave to appear and defend against the bill for foreclosure, the same as though her default had not been entered, and the decree for foreclosure had not been rendered. As a reason for her petition she alleged that she had not been served with summons in the foreclosure proceedings and that she had received no notice of the pendency of the suit. Her petition is based on section 19 of the Chancery Act, Cahill's St. ch. 22, ¶ 19, which provides:

"When any final decree shall be entered against any defendant who shall not have been summoned or been served with a copy of the bill, or received the notice required to be sent him by mail, and such person, his heirs, devisees, executor, administrator or other legal representatives, as the case may require, shall, within one year after notice in writing given him of such decree, or within three years after such decree, if no such notice shall have been given as aforesaid, appear in open court and petition to be heard touching the matter of such decree, and shall pay such costs as the court shall deem reasonable in that behalf, the person so petitioning may appear and answer the complainant's bill, and thereupon such proceedings shall be had as if the defendants had appeared in due season and no decree had been made. And if it shall appear, upon the hearing, that such decree ought not to have been made against such defendant, the same may be set aside, altered or amended as shall appear just; otherwise the same shall be ordered to stand confirmed against said defendant. The decree shall, after three years from the making thereof, if not set aside in man-

ner aforesaid, be deemed and adjudged confirmed against such defendant, and all persons claiming under him by virtue of any act done subsequent to the commencement of such suit; and at the end of the· said three years, the court may make such further order in the premises ·as· shall be required to carry the same into effect."

Subsequently Scowley filed a petition alleging that he had purchased the interest of Etna Wilkey in the mortgaged premises and asked leave to carry on in the name of Etna Wilkey the petition filed by her and open up the decree. Upon a hearing the court found that Etna Wilkey did not file her petition within three years from the date when the final decree was rendered; that she did not appear in open court and petition to be heard within that time, and that the evidence does not show that she did not receive the notice required to be sent to her by mail; that her petition was without merit; that the petition of Andrew A. Scowley for leave to prosecute her petition be denied, and that Scowley pay all the costs occasioned by the petition and motion. Andrew A. Scowley has brought this record to this court by writ of error and the assignment of errors present for consideration the following questions:

Did Etna Wilkey receive the notice required to be sent by the clerk? Did Etna Wilkey appear in open court with her petition within three years after the decree of foreclosure was entered? Was said decree a binding decree against Etna Wilkey on the 15th day of December, 1922, or did said decree take effect only after same was filed on December 27, 1922? Did Etna Wilkey have the right after she had conveyed the premises to plaintiff in error Scowley to dismiss her petition over Scowley's objection? Did Andrew A. Scowley have the right to appear, after Etna Wilkey had filed her petition and made proof that she had not received the notice mailed to her at No. 17 North

LaSalle Street, Chicago, in her name and as her grantee, and make any defense that as grantor Etna Wilkey might and could have made? Lastly, did the court err in directing that plaintiff in error Scowley pay the costs of this proceeding?

We will first give consideration to the question as to whether or not Etna Wilkey appeared in open court within three years after the decree for foreclosure was rendered and petition to be heard touching the matters of said decree. The facts as disclosed by this record are that the minutes of the judge, as they appear on the docket, show that the decree was entered on December 15, 1922. The decree recites that it was entered on said date, but the filing mark indorsed on the back of said decree is December 27, 1922. The petition of Etna Wilkey was filed December 24, 1925. It will therefore be observed that if the true date of the decree is December 15, 1922, she did not appear in open court within the time limit provided by the statute. If the true date of the decree is December 27, 1922, she did appear within that time.

The validity of a decree shown by the record to have been regularly entered in open court on a certain date is not impaired by evidence of indorsement of a file mark of a different date on the back of apparently the same decree by the clerk of the court, and such indorsement, or the fact it is apparently the same decree, cannot be regarded as contradiction of such record. The record of a court imports verity and cannot be contradicted by other evidence but is conclusive upon the parties to the suit as well as all others whose interest may be affected thereby. *Harmening v. Hawley,* 208 Ill. App. 487.

In *Weigley v. Matson,* 125 Ill. 64, at page 66, we find the following quotation: ''It is the settled rule of law, that the record of a court showing a judgment by confession in open court, imports verity, and can not be contradicted by parol evidence. (*Roche v. Beldam,*

119 Ill. 320.) The record of such judgment is the only proper evidence of itself, and is conclusive evidence of the fact of the rendition of the judgment, and of all the legal consequences resulting from that fact, both as against the parties to the judgment and all others whose interests may be affected thereby. *Koren v. Roemheld,* 7 Ill. App. 646; *Richardson v. Beldam,* 18 id. 527; *Jasper et al. v. Schlesinger et al.,* 22 id. 637.

"The complainant, then, by admitting that the judgments which he is seeking to have set aside purport to have been entered in open court, in term time, admits the existence of judgment records which furnish conclusive evidence that said judgments were so entered, and he has therefore precluded himself, by such admission, from insisting that the contrary is the fact."

The case of the *People ex rel. Holbrook v. Petit,* 266 Ill. 628, was a mandamus proceeding in which it was sought to mandamus a judge of the circuit court of Cook county to 'expunge from the record a certain order that had been entered. The court, at page 631, among other things said: "The memoranda set out in the pleadings did not constitute the record of a judgment. They are no part of the record of the court. The rendition of a judgment is the act of the court and can ordinarily be proved only by the record. The judgment exists, however, from the time the court acts, even though the entry of the judgment may not have been formally written by the clerk, and it is not necessary to the validity of an execution that the judgment shall have been formally written upon the record of the proceedings of the court before the execution is issued."

In *Dugan v. Follett,* 100 Ill. 581, it was held that a party taking title to property need not look beyond the record of decrees or judgments and need not look to and is not bound by what may appear in the files of a case in the clerk's office. At page 590, the court among other things said: "In the investigation of titles, pur-

chasers look for decrees and judgments against those who appear of record to have been owners, and when it is ascertained that a particular decree or judgment does not affect the title which is the object of inquiry, it is believed not to be customary to look further; and to hold that purchasers are affected with constructive notice of every fact relating to the purchased estate that may happen to appear in some of the files of a case, and not elsewhere, would, in our judgment, be carrying the doctrine of constructive notice to a dangerous extent. The establishment of such a rule would have a direct tendency to unsettle titles, for no one could know of a certainty when he was getting a good title, without examining the files in every case in the county where the land lay, and this would be wholly impracticable. We hold, therefore, purchasers are not bound to look beyond the judgment or decree, and the legal effect it may have on the title which is the subject of inquiry.''

In *Horn v. Metzger,* 234 Ill. 240, it was sought to contradict the record by the fact that the original draft of the decree had had this caption, ''As of the January term,'' whereas as reported in the record, it was entered in the April term as of May 18th. In the discussion of this case, the court at page 244 said: ''It is contended that it is so contradicted by the fact that the original draft of the decree has at its beginning a caption as of the January term, and that the decree appears in the chancery record of the court on a page following the convening order of the January term and preceding the convening order of the April term. Such original draft of the decree is no part of the record. It is the decree actually entered in the record which must be regarded as the decree pronounced by the court. To that record, only, can we look, and it cannot be called in question by a reference to any collateral matter or to a paper not a part of the record. If the record does

not correctly show the action of the court it can be corrected only by a direct proceeding for that purpose.''

*Moore v. Shook,* 276 Ill. 47, was a bill filed purporting to be in the nature of a bill of review, by the appellant in the circuit court of Madison county, praying that a decree of divorce be reviewed, and so altered that the date when the evidence was heard, and the court decision pronounced in open court, be held to be the date when the decree became effective, rather than the date when the written decree was approved by the judge, and thereafter filed with the clerk. A demurrer was interposed to the bill which was sustained by the chancellor. On appeal the case was reversed and remanded with directions, and the court at page 53 said: ''The rendition of a judgment is a judicial act and the entry a ministerial one. (1 Black on Judgments,—2d ed.—sec. 106.) 'That which the court performs judicially or orders to be performed is not to be avoided by the action or want of action of the judges or other officers of the court in their ministerial capacity.' (1 Freeman on Judgments,—4th ed.—sec. 38.) Without doubt, the date of the decree would have been entered as of December 2, 1911, even though the written document had not been presented to the judge until December 16, if the request had been made at that time to have it so entered or if the document as so presented had stated that it was entered December 2. During Dr. Moore's lifetime, had he filed a petition subsequent to the term at which the decree was granted to have the date changed and have it entered as of December 2, 1911, instead of December 16, the court, on proper notice to the interested parties, would have been justified in making such change.''

We have examined a great number of authorities relied upon by the respective parties. We are of the opinion that the record of the date of the entry of the decree, as disclosed by the judge's docket, and by the decree itself, cannot be contradicted by the clerk's file

mark placed on the back of the decree. Such being the case, the petition of Etna Wilkey was not filed within the three years' limit. We are of the opinion that the conclusion reached, that the decree was entered December 15, 1922, is conclusive of all other questions involved in this proceeding excepting the question of costs.

We are of the opinion that Etna Wilkey was bound by the provisions of section 19 of the Chancery Act, Cahill's St. ch. 22, ¶ 19, heretofore set out in this opinion. The purpose of section 19 is to afford relief to defendants who, (1) shall not have been served with summons, (2) all those who have not been served with a copy of the bill, (3) or received a notice of the pendency of the suit as provided for in section 12 of the Chancery Act, Cahill's St. ch. 22, ¶ 12. In other words the provisions of section 19 are available only to those who have been constructively served by some means known to the law, and do not apply to anyone upon whom no service of any kind has been made. Where no service has been had upon a defendant he is not bound by a decree and need take no notice of it. Where, however, he has been served by some of the known methods, he is bound by it and must take notice of it. If the service so made was constructive only then he may avoid the binding force of the decree by appearing in open court and asking leave to defend as provided in section 19 aforesaid.

The respective solicitors have indulged in much argument over the fact that the clerk of the circuit court of Will county sent a copy of the publication notice to room 610, 17 North LaSalle Street, Chicago, Illinois, which was a business address and not a residence address. It appears to us that such argument is upon an immaterial matter, so far as it relates to this case. The affidavit of nonresidence expressly states that the places of residence of the defendants are unknown after diligent inquiry by the affiant to ascertain

the same. The affidavit then proceeds to state where the last place of residence of said defendants was and in so doing states that it was at room 610, 17 North LaSalle Street. Section 12 of the Chancery Act, Cahill's St. ch. 22, ¶ 12, does not require the clerk to send a copy of the publication notice to nonresident defendants, the place of whose residence is unknown. Such copy is required to be sent only when the residence is known and stated in the affidavit. Hence it is immaterial in this case whether the clerk sent any copy of the notice or not. *Schaefer v. Kienzel,* 123 Ill. 430, holds that an affidavit stating the address as "20 St. Louis Avenue, St. Louis, Missouri" is sufficient, and *Hannas v. Hannas,* 110 Ill. 53, holds that an address given as "San Francisco, California" is sufficient. The affiants in both cases gave the address as above and stated it was the residence of the defendants. In the case at bar the affidavit gave no place of residence at all, but expressly stated that the places of residence were not known, consequently the cases relied upon are not in point. We hold, therefore, that the affidavit of nonresidence filed in the foreclosure proceedings is good and sufficient; that it states the residences of the respective defendants are unknown; that due publication was had under such affidavit; that the clerk was not required to mail any copy of said notice; that his effort to mail the defendants copies thereof was of no force or effect; that service was had upon each of said defendants by publication; that the decree of foreclosure was entered on December 15, 1922, and that the petitioner Etna Wilkey and the petitioner Scowley did not appear in open court within three years from the date of said decree and petition the court to open up the decree and permit them to defend.

In addition to the questions above discussed it is suggested by the plaintiff in error Scowley that the court erred in adjudging costs against him. Costs in chancery cases are adjudged at the discretion of the chancellor and will not be reviewed unless that discre-

tion has been abused. *Merle v. Beifeld,* 275 Ill. 594. The petition of Etna Wilkey was filed for the benefit of Scowley and at his instance. He was the moving cause and the costs that have been incurred were largely incurred by him or at his direction or because of his starting proceedings in motion and therefore he should be required to pay them.

The record shows that John P. Schuster and wife, after the making of the trust deed foreclosed in this proceeding, conveyed a right-of-way over the lands described in the trust deed to John H. Gulick for the use of the Public Service Company of Northern Illinois. On the day of the conveyance by Schuster and wife of the land for the right-of-way the trustee executed a release to the premises conveyed to Gulick. In order that no question might arise relative to the lands included in the right-of-way Scowley, the plaintiff in error, John H. Gulick and the Public Service Company of Northern Illinois entered into and filed a stipulation in this court in which it was stipulated among other things that Scowley, plaintiff in error, for a consideration of $750 agreed to convey by warranty deed, his wife joining therein, to the Public Service Company of Northern Illinois, the lands and premises previously conveyed for a right-of-way by Schuster and wife, and the said Scowley in said stipulation further covenanted and agreed to relinquish any and all claim, right, title or interest in and to the premises included in the right-of-way and agreed that any decree, order or judgment which might thereafter be entered in this suit or proceeding which should affect the title to the real estate involved should not in any way affect the title of Gulick or the Public Service Company of Illinois.

We hold, therefore, that the order of the court in dismissing the petitions of Wilkey and Scowley was correct and that the order should be affirmed, which is accordingly done.

*Order affirmed.*