2021 IL App (2d) 190490-U
No. 2-19-0490
Order filed March 19, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| NATIONSTAR MORTGAGE, LLC, | ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10-CH-2501 |
| | ) | |
| DERRICK McKINLEY, aka Derrick P. McKinley; FOUR LAKES CONDOMINIUM HOMES CONDOMINIUM ASSOCIATION B; UNKNOWN HEIRS AND LEGATEES OF DERRICK McKINLEY, IF ANY; UNKNOWN OWNERS AND NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Derrick McKinley, Defendant-Appellant; Wells Fargo Bank, N.A., Respondent-Appellee). | ) ) ) | Honorable James D. Orel, Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where defendant filed a petition for relief from an allegedly void default foreclosure judgment for lack of personal jurisdiction pursuant to 735 ILCS 5/2-1401(f) (West 2018), the petition was properly dismissed because (1) the mortgagee exercised the requisite due inquiry to locate defendant and due diligence to ascertain defendant's place of residence prior to serving him by publication; (2) the

publication affidavit was filed within a reasonable time after the mortgagee exhausted its leads in searching for defendant; and (3) the argument raised by defendant regarding the absence of a certificate from the clerk of court was previously rejected by this court. Therefore, we affirmed.

¶ 2 Defendant, Derrick McKinley, brought a petition under section 2-1401(f) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(f) (West 2018)), arguing that the default judgment of foreclosure entered against him was void *ab initio* for lack of personal jurisdiction because plaintiff, Nationstar Mortgage, LLC (Nationstar), failed to strictly comply with the requirements of section 2-206(a) of the Code (735 ILCS 5/2-206(a) (West 2018)) for service by publication. Nationstar and section 2-1401 respondent, Wells Fargo Bank, N.A. (Wells Fargo), both filed motions to dismiss, which the circuit court granted after a hearing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 On May 5, 2010, Nationstar filed an action against defendant, as owner and mortgagor, to foreclose its mortgage lien interest on the real property located at 6020 Oakwood Drive, Unit 3H, Lisle, Illinois, 60532 (the property). The complaint alleged that defendant had defaulted on his mortgage loan by failing to make payments for August 2009 and thereafter.

¶ 5 The record reflects that the special process server, E.L. Johnson Investigations, unsuccessfully attempted to serve defendant on two occasions. The service affidavits demonstrate the following. On May 14, 2010, the process server attempted unsuccessfully to serve defendant at the property. It averred that the property was vacant, that there was a realtor lock box associated with the property in the lobby of the building, and that "there was a Census visit note wedged into the door frame." On May 21, 2010, the process server attempted to serve defendant at the Du Page County Sheriff's Office, which was the address listed on defendant's vehicle registration. This attempt, too, was unsuccessful. The process server averred that he spoke with an administrator in the Du Page County Sheriff's Office, but he was advised that defendant was a former inmate of

the Du Page County jail who was released in February 2010. The process server prepared a "locate affidavit" reiterating the above-referenced service attempts and further stating that it had conducted a search of multiple public records databases, which covered death records, telephone information services, a social security number search, and a vehicle registration search with the Illinois Secretary of State. According to the affidavit, these searches yielded no telephone number or address for defendant other than the property and the Du Page County Sheriff's Office. The affidavit indicated that, as of May 27, 2010, defendant could not be found. These affidavits were file-stamped by the clerk of the circuit court on June 7, 2010.

¶ 6    On June 18, 2010, Nationstar filed an affidavit for service by publication (publication affidavit) pursuant to section 2-206(a) of the Code. The affidavit was executed by one of Nationstar's attorneys, Paul D. Brask, who averred that, after due inquiry, defendant's whereabouts were unknown and defendant's address could not be ascertained such that he could not be personally served with process, as well as that defendant's last known address was the property. Brask also detailed Nationstar's various efforts to locate defendant. Specifically, he averred that Nationstar: (1) ordered and reviewed defendant's credit report for possible addresses on April 22, 2010; (2) reviewed Nationstar's foreclosure information package for possible addresses on April 27, 2010; (3) reviewed the deed for the property for possible additional addresses on April 27, 2010; (4) reviewed public records of the Du Page County probate court for a possible pending probate case on April 28, 2010; (5) attempted to serve defendant personally on May 14 and May 21, 2010, as attested to by the process server; (6) ordered and reviewed a property inspection report on May 5, 2010, to determine the occupants of the property; and (7) searched various databases on May 27, 2010, as previously attested to by the process server in the locate affidavit.

¶ 7    On June 24, 2010, Nationstar filed a certificate of publication indicating that it had published notice of the foreclosure in the Lisle Sun newspaper on June 25, July 2, and July 9, 2010.

¶ 8    On September 20, 2011, another attorney for Nationstar, Elliott Halsey, averred that he reviewed the court file on September 12, 2011, and that the proof of service of the summons showed that defendant was served by publication on June 25, 2011, but that defendant had neither filed an appearance nor answered the complaint.

¶ 9    That same day, on September 20, 2011, the circuit court entered an order of default against defendant, as well as a judgment of foreclosure and sale. The judgment expressly stated that the court "ha[d] jurisdiction over the parties."

¶ 10    On January 5, 2012, the property was sold at a judicial sale, and the circuit court entered an order confirming the sale on January 31, 2012. The confirmation order expressly stated that the "[c]ourt obtained personal jurisdiction" over defendant. Defendant did not pursue a direct appeal. The property was subsequently sold to a third party, Adriane M. Gray, on June 12, 2012. She financed her purchase of the property, in part, with a loan from Wells Fargo.

¶ 11    On February 28, 2013, defendant filed a Chapter 7 bankruptcy petition. He did not list the property in his schedule of assets. Instead, he reported that he lost the property in a foreclosure proceeding. Defendant's debts were discharged, and the bankruptcy was closed, in June 2013.

¶ 12    More than six years after the foreclosure concluded and Gray took title to the property, on October 23, 2018, defendant filed a petition for relief from void judgments (the petition) pursuant to section 2-1401(f) of the Code. He asserted that the default judgment should be vacated as void *ab initio* because Nationstar failed to strictly comply with the requirements of section 2-206(a) of the Code for service by publication, such that the circuit court lacked personal jurisdiction over him in the underlying foreclosure proceeding. Specifically, he asserted that (1) the publication

affidavit showed that Nationstar lacked diligence in attempting to locate him prior to requesting service by publication because (1) the "actions described in the affidavit occurred about 2 months before the affidavit was filed" and (2) the record did not contain a certificate of the clerk that the publication notice was mailed as required by section 2-206(a). He requested, among other relief, that the circuit court (1) find that the lack of jurisdiction was apparent on the face of the record; (2) decree him the owner of the property and award him possession; (3) order Nationstar, Gray, and others, "to pay [him], as restitution, reasonable use and occupancy of [the property] from March 1, 2012, through and including the date [he] is restored to possession." In the alternative, defendant requested that Nationstar, Gray, and others, be ordered to pay "as restitution, the value of the [p]roperty on the date that [the] petition is granted plus reasonable use and occupancy of [the property] from March 1, 2012, through and including the date that restitution is paid in full," as well as order Nationstar, Gray, Wells Fargo, and others, to pay him "as restitution, all profits that they derived from [the property]." He did not support the petition with an affidavit or other verification to show any matters outside of the court record.

¶ 13    On January 22, 2019, Nationstar filed a motion to dismiss the petition pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)). It argued that the petition was legally insufficient because Nationstar's publication affidavit demonstrated diligent efforts to conventionally serve defendant prior to obtaining service by publication. It further argued that section 2-206(a) of the Code did not require a certificate of mailing from the clerk because the court file contained a certificate of publication and the circuit court made an express finding that it had personal jurisdiction over defendant.

¶ 14    On February 13, 2019, Wells Fargo filed a combined motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). It raised arguments like those raised by

Nationstar concerning the sufficiency of defendant's petition, and it further argued, in part, that: (1) section 554 (c) and (d) of Title 11 of the United States Code (Bankruptcy Code) (11 U.S.C. § 554(c), (d) (West 2018)), precluded defendant's petition; (2) it was entitled to *bona fide* purchaser protections under section 2-1401(e) of the Code (735 ILCS 5/2-1401(e) (West 2018)); (3) the petition was barred by the doctrine of *laches*; (4) the petition failed to establish a lack of personal jurisdiction over defendant; and (5) the petition sought improper relief.

¶ 15     On May 6, 2019, after a hearing, the circuit court granted both motions and dismissed the petition with prejudice.  Defendant timely appealed.

¶ 16                                          II. ANALYSIS

¶ 17     Defendant appeals the dismissal of his section 2-1401 petition, arguing that the circuit court lacked personal jurisdiction over him when it entered the default judgment of foreclosure.  We conclude that dismissal was appropriate under section 2-619(a)(9) of the Code, which allows dismissal of an action where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."  735 ILCS 5/2-619(a)(9) (West 2018). We review the dismissal of an action under section 2-619(a)(9) *de novo*.  *JP Morgan Chase Bank, N.A. v. Robinson*, 2020 IL App (2d) 190275, ¶ 17.  Moreover, when a petition is brought pursuant to subsection (f) of section 2-1401 of the Code, it raises a purely legal challenge to a judgment, and we review the matter *de novo*.  *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 47.

¶ 18     Section 2-1401 of the Code "authorizes a party to seek relief from a final judgment, when brought more than 30 days after judgment has been entered."  *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002).  The purpose of a section 2-1401 petition is to bring to the attention of the trial court facts that, if known at the time of judgment, would have precluded its

entry. *Arch Bay Holdings, LLC-Series 2010B v. Perez*, 2015 IL App (2d) 141117, ¶ 8. Typically, relief under this section requires that a petitioner file, between 30 days and 2 years from the entry of the judgment, a petition demonstrating: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim; and (3) due diligence in filing the petition. *U.S. Bank National Ass'n v. Rahman*, 2016 IL App (2d) 150040, ¶ 25. However, these requirements are inapplicable where, as is the case here, the section 2-1401 petition is brought under subsection (f), which allows a petitioner to attack a judgment as void. *Id.* "[T]he allegation [in a section 2-1401 petition] that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence." *Warren County*, 2015 IL 117783, ¶ 48 (quoting *Sarkissian*, 201 Ill. 2d at 104. A section 2-1401 petition "must be supported by affidavit or other appropriate showing as to matters not of record." 735 ILCS 5/2-1401(b) (West 2018)); *Deutsche Bank National Trust Co. v. Sedys*, 2019 IL App (2d) 180188, ¶ 12. "[A] petition for relief from judgment under section 2-1401 [is] a proper vehicle by which to challenge a judgment as void for lack of personal jurisdiction." *West Suburban Bank v. Advantage Financial Partners, LLC*, 2014 IL App (2d) 131146, ¶ 25.

¶ 19    It is well established that a valid judgment requires jurisdiction over both the subject matter of the litigation and the parties to that litigation. *In re Marriage of Verdung*, 126 Ill. 2d 542, 547 (1989). The court may acquire personal jurisdiction either by the party making a general appearance or by service of process compliant with the applicable statutory requirements. *Id.* "A judgment entered by a court that lacks jurisdiction over the parties is void and may be attacked and vacated at any time, either directly or collaterally. *Id.*

¶ 20    Relevant here, personal jurisdiction may be acquired by means of publication in actions affecting property pursuant section 2-206 of the Code.  It provides, pertinently, that a party seeking to serve a defendant by publication must file:

> "an affidavit showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained[.]"  735 ILCS 5/2-206(a) (West 2010).

Once such an affidavit is filed, section 2-206 triggers certain obligations for the clerk of court.  Namely, the clerk must publish notice of the pendency of the action in a newspaper that circulates within the county where the action is pending.  Then, within ten days of the first publication, the clerk must:

> "send a copy thereof by mail, addressed to each defendant whose place of residence is stated in such affidavit.  The certificate of the clerk that he or she has sent the copy in pursuance of this Section is evidence that he or she has done so."  *Id*.

¶ 21    The crux of defendant's argument on appeal is that the circuit court lacked personal jurisdiction over him in the underlying foreclosure proceeding because section 2-206(a) of the Code, which governs service by publication, was not strictly complied with.  His argument is twofold, and it largely mirrors that which the circuit court rejected when it dismissed the petition.  Namely, defendant contends that the default judgment of foreclosure is void because (1) Nationstar did not undertake an honest effort to locate him prior to serving him by publication, and (2) the record does not contain a certificate from the clerk of court indicating that it mailed him published notice of the proceedings.  We reject both arguments, in turn.

¶ 22    The requirements of section 2-206(a) are well settled. "The plaintiff must conduct both 'diligent inquiry' in ascertaining the defendant's residence and 'due inquiry' in ascertaining the defendant's whereabouts before the plaintiff can properly execute an affidavit stating that the defendant cannot be found. *Citimortgage, Inc. v. Cotton*, 2012 IL App (1st) 102438, ¶ 18. The requirements of due diligence and due inquiry must be strictly complied with in order to vest the circuit court with jurisdiction over a defendant. *BankUnited v. Velcich*, 2015 IL App (1st) 132070, ¶ 30. Due inquiry to find the defendant and due diligence to ascertain the defendant's place of residence are statutory prerequisites for service by publication. *Bank of New York v. Unknown Heirs and Legatees*, 369 Ill. App. 3d 472, 476 (2006). These "are not intended as *pro forma* or useless phrases requiring mere perfunctory performance, but, on the contrary, require an honest and well-directed effort to ascertain the whereabouts of a defendant by inquiry as full as circumstances permit." *Id*. These requirements are grounded in the notion that every defendant "is entitled to receive the best possible notice of [a] pending suit." See *Bell Federal Savings and Loan v. Horton*, 59 Ill. App. 3d 923, 926 (1976). Service by publication is permissible only in limited cases where personal service could not be achieved and only after strict compliance with section 2-206. *Deutsche Bank National Trust Co. v. Brewer*, 2012 IL App (1st) 111213, ¶ 18.

¶ 23    Defendant's argument in his section 2-1401 petition, and on appeal, is that Nationstar did not undertake an honest effort to locate him prior to seeking to serve him by publication. "Where the efforts to comply with these statutory provisions have been casual, routine, or spiritless, service by publication is not justified." *Bank of New York*, 369 Ill. App. 3d at 476. In defendant's estimation, Nationstar's efforts of conducting "five perfunctory 'reviews' of documents during a two-week period followed by a mere two attempts at personal service within a one-week span" were insufficient to strictly comply with section 2-206(a) because it lacked the required due

diligence and due inquiry, and he maintains that the publication affidavit affirmatively demonstrates a lack of due and diligent inquiry in attempting to locate him.

¶ 24 Notwithstanding his characterization of the publication affidavit, defendant's argument appears to raise a factual issue concerning the sufficiency of Nationstar's efforts to locate him—it does not demonstrate the presence of any defect appearing on the face of the publication affidavit. See *Bank of New York Mellon v. Karbowski*, 2014 IL App (1st) 130112, ¶ 11. Because he contested the exercise of Nationstar's due diligence and due inquiry generally, rather than any specific defect that affirmatively appears on the face of the publication affidavit, it was incumbent upon defendant to file a counteraffidavit demonstrating that he could have been found on "due inquiry" and with "due diligence." Compare *First Bank & Trust Co. of O'Fallon, Illinois v. King*, 311 Ill. App. 3d 1053, 1057 (mortgagor's bare allegation that mortgagee failed to conduct due inquiry was conclusory and thus insufficient) with *Karbowski*, 2014 IL App (1st) 130112, ¶ 11 (mortgagor did not need to file an affidavit in support of his motion to quash service because he did not contest the mortgage holder's exercise of due diligence in attempting to locate him).

¶ 25 Here, defendant's section 2-1401 petition lacked any counteraffidavit showing that he could have been found with due and diligent inquiry. "A defendant challenging service by publication must file a counteraffidavit stating that he could have been found upon due inquiry." *American Chartered Bank v. USMDS, Inc.*, 2013 IL App (3d) 120397, ¶ 19. See, generally, *King* 311 Ill. App. 3d at 1056-57. See also *People ex rel. Waller v. Harrison*, 348 Ill. App. 3d 976, 981-82 (noting that "courts require a defendant challenging service [under section 2-206] to file a counteraffidavit stating that upon reasonable inquiry he or she could have been found"). Even on appeal, defendant does not suggest that he could have been found when Nationstar attempted to locate him, and his whereabouts during this period remain a mystery.

¶ 26    We also note that, while defendant criticizes Nationstar's "mere two attempts at personal service," his argument omits critical facts of both instances. First, it overlooks the fact that the process server was unsuccessful in serving defendant at the property, which was the subject of the underlying foreclosure proceeding, because the property was *vacant*. Specifically, the process server averred that the property was vacant, that a realtor lock box associated with the property was in the lobby of the building, and there was a note wedged into the door frame demonstrating that a U.S. Census worker was also unsuccessful in reaching any occupant of the property. After searching various public databases, Nationstar next attempted to serve defendant at the Du Page County jail, as this was the address listed on defendant's motor vehicle registration. This attempt was also unsuccessful, and the process server confirmed with the sheriff's office that defendant was released some three months prior. In both instances, nothing suggested that defendant resided at either location or that he would ever return, such that further service attempts could be successful. As this court has previously observed, diligence depends on the facts of each specific case and not on "the sheer number of attempts at service." *Harrison*, 348 Ill. App. 3d at 981. Indeed, "the statute does not require futile attempts to serve a defendant at an address where he does not live or at an address that does not exist." *Id*. We agree with Wells Fargo that, under these circumstances, Nationstar was not required to continue to engage in futile efforts to serve defendant at either location when nothing suggested that he could ever again be found there. See *Neighborhood Lending Services Inc., v. Griffin*, 2018 IL App 162855, ¶ 23 (rejecting a challenge to service by publication where the defendant offered no authority "requiring a process server to repeatedly engage in knowingly futile visits before attempting a different method of service").

¶ 27    In addition to Nationstar's documented attempts to serve defendant personally, the publication affidavit detailed its efforts to ascertain any viable addresses at which defendant could

be found. Specifically, it ordered and reviewed defendant's credit report, reviewed its foreclosure information package, reviewed the deed vesting defendant with title to the property, searched court records for a pending probate case, ordered and reviewed a property inspection report to determine whether the property was occupied, and reviewed numerous public databases, including databases housing death records, telephone listings, social security numbers, and vehicle registrations. These searches yielded just two addresses—the property itself, which was vacant, and an address associated with the Du Page County jail, from which defendant was released several months earlier. Nationstar was likewise unable to find any telephone listing for defendant. The statutory prerequisites for publication service "require[] an honest and well-directed effort to ascertain the whereabouts of a defendant by an inquiry *as full as circumstances can permit*." (Emphasis added.) *Bank of New York*, 369 Ill. App. 3d at 476. Nationstar exhausted its leads and, in doing so, it demonstrated an honest and well-directed effort to ascertain defendant's place of residence or general whereabouts by inquiry as full as the circumstances allowed. Defendant's failure to suggest (either in a counteraffidavit appended to his petition or on appeal) any additional inquiry Nationstar could have made to locate him underscores this conclusion. As such, Nationstar exercised the requisite due inquiry to locate defendant and due diligence to ascertain his place of residence under section 2-206(a) prior to moving to serve him by publication.

¶ 28    Defendant next argues that Nationstar did not strictly comply with section 2-206(a) because the length of time between Nationstar's attempts to locate him and its filing of the publication affidavit was too great, such that the publication affidavit was defective on its face. He stresses that Nationstar's efforts to locate him began on April 22, 2010 (when it reviewed defendant's credit report in search of a viable address), but the publication affidavit was not filed until 57 days later, on June 18, 2010. He similarly notes that there was a delay of 44 days between Nationstar's May

5, 2010, review of the property inspection report and the filing of the publication affidavit. We observe that, in his section 2-1401 petition, he asserted that the "actions described in the [publication] affidavit occurred about two months before the affidavit was filed." In his view, the delay reinforces "the apparent laxity of Nationstar's supposed service efforts." Defendant relies on a single line from *Karbowski*, 2014 IL App (1st) 130112, ¶ 18, where the appellate court observed that "[c]ommon sense dictates *** that an affidavit that recites efforts to locate a party occurring a substantial period of time prior to the filing of the motion to serve by publication may not be sufficient to establish the due diligence required."

¶ 29    Defendant's argument is without merit. In *Karbowski*, 2014 IL App (1st) 130112, ¶ 21, the court held that a 50-day delay between the mortgagee's execution of the affidavit in support of its motion to serve by publication and the eventual filing of the motion to allow publication was too lengthy such that it was defective on its face and precluded the mortgagee from establishing due diligence. The holding was premised, in large part, on the fact that the publication affidavit recited efforts to serve the mortgagor purportedly made *after* the affidavit was executed and notarized. *Id.* ¶ 23. Specifically, the bank filed an affidavit for service by publication that detailed efforts to locate and serve the mortgagor between July and late October 2009, despite the fact that the affidavit stated it was executed on September 14, 2009. *Id.* ¶¶ 3-4. Under those circumstances, the court was reluctant to "rely on the substance of an affidavit that is at odds with the notary's seal," and it "had no way of knowing the correct date the affidavit was executed and notarized." *Id.* ¶ 23.

¶ 30    In contrast, here, the delay between Nationstar's execution of the publication affidavit and its filing with the clerk was just one day because it executed the publication affidavit on June 17 and filed it on June 18, 2010. Further, no incongruity appears on the face of the publication

affidavit, unlike in *Karbowski*. The publication affidavit detailed Nationstar's search for defendant and its attempts to serve him, all of which occurred between April 22, 2010, and May 27, 2010. Moreover, defendant's use of Nationstar's earliest efforts to locate him as the starting point in calculating the length of the "delay" in filing the affidavit is misguided. If this argument were accepted, it would encourage plaintiffs to engage in as brief a search as possible for a defendant before filing a motion seeking service by publication to avoid the appearance of any "delay."

¶ 31   Measured from the last date included in the publication affidavit, May 27, 2010 (when Nationstar searched various databases as averred in the locate affidavit), the "delay" between Nationstar's efforts to locate defendant and Nationstar's filing of the publication affidavit is 22 days. Notably, the court in *Karbowski* did not define what constitutes a "substantial period of time," and it observed that section 2-206 specifies no time limit applicable "for determining whether a plaintiff's efforts to locate a defendant are sufficient to warrant service by publication." *Id*. ¶ 18. Rather, it acknowledged that the question of reasonableness necessarily depends upon the facts and circumstances of each case. *Id*. ¶ 20 (citing *Campbell v. McCahan*, 41 Ill. 45 (1866)).

¶ 32   Here, defendant abandoned the premises, Nationstar could find no viable alternate address, and defendant failed to file a counteraffidavit attesting to how he could have been found. Although Nationstar certainly could have filed the publication affidavit closer in time to when it exhausted its leads in searching for defendant, this time span is not "a substantial period of time" as contemplated in *Karbowski*, and it was reasonable under the circumstances. See *In re Marriage of Wilson*, 150 Ill. App. 3d 885, 889-90 (holding that a 23-month delay between the execution of the affidavit and service by publication was unreasonable).

¶ 33   Defendant's final argument on appeal is that section 2-206(a) was not strictly complied with because "[t]he record does not contain the required clerk's certificate of mailing" stating that

it mailed him a copy of the publication notice. His sole contention on this issue appears to be the absence of a certificate of mailing in the record and, indeed, he identifies it as "a statutorily mandated document."

¶ 34    In *Sedys*, the mortgagee filed a foreclosure complaint and an affidavit for service by publication. *Sedys*, 2019 IL App (2d) 180188. ¶ 4. The affidavit identified the mortgagor's place of residence but stated the mortgagee was unable to serve him after several unsuccessful attempts. *Id*. The mortgagee provided the clerk with a notice of the proceeding for publication in a newspaper, but the record did not contain a certificate from the clerk that it mailed the published notice to the mortgagor at the address listed in the affidavit. *Id.* After the mortgagor failed to appear, the circuit court found that it had personal jurisdiction and defaulted the mortgagor. *Id*. ¶ 5. Years later, just as in the instant case, the mortgagor filed a petition under section 2-1401 of the Code, asserting that the default foreclosure judgment and all subsequent orders were void (*id.* ¶ 6), but the circuit court dismissed the petition (*id.* ¶ 13). On appeal, the mortgagor argued that the lack of a certificate in the record was sufficient grounds for reversal (*id.* ¶ 16), but we expressly rejected this argument and held that "[t]he absence of a clerk's certificate from the record in a case does not, of itself, show a failure to comply with the mailing requirement of section 2-206(a)" (*id.* ¶ 37). Relying on familiar principles of statutory interpretation, we construed the language of section 2-206(a), which provided that "[t]he certificate of the clerk that he or she has sent the copy [of the published notice] in pursuance of this Section is evidence that he or she has done so," as identifying but one form of acceptable evidence that the clerk mailed a copy of the published notice. As such, we concluded that "[a] certificate from the clerk is not the only acceptable proof of mailing under section 2-206(a)[,] but [rather,] such proof may take the form of other documentary evidence and also testimony." *Id.* ¶ 37.

¶ 35    Here, as noted by both Nationstar and Wells Fargo, defendant's argument focuses on the absence from the record of a certificate from the clerk stating that it mailed the publication notice to him. We rejected the identical argument in *Sedys,* which defendant failed to cite in his appellate brief. We again reject the argument, here. To the extent that defendant perhaps could have, but did not, argue that Nationstar did not make an affirmative showing that the clerk mailed the publication notice, the argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring that an appellant's brief contain "argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on," and stating that "[p]oints not argued are forfeited"). "An issue that is merely listed or included in a vague allegation of error is not "argued" for purposes of Rule 341(h)(7). *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010).

¶ 36    In any event, it is unclear whether the clerk is required to mail a copy of the publication notice to a defendant whose place of residence is unknown, as was the case here. In order to effectuate service by publication, section 2-206(a) requires the plaintiff to file "an affidavit showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her, and *stating the place of residence of the defendant, if known*, or that upon diligent inquiry his or her place of residence cannot be ascertained. (Emphasis added.) 735 ILCS 5/2-206(a) (West 2018). This language appears to require a plaintiff to state the "place of residence of the defendant" in the affidavit only "if known." Here, Nationstar averred that defendant, "on due inquiry[,] cannot be found so that service cannot be served upon [him]" and that defendant's "address[,] upon diligent inquiry[,] cannot be ascertained." Although the affidavit included the address of the property,

Nationstar identified it as defendant's "last known address" because the property was vacant. In effect, Nationstar averred that defendant's "place of residence" was *not* known.

¶ 37    Pertaining to the clerk's mailing obligations, section 2-206(a) requires the clerk to, "within 10 days of the first publication of the notice, send a copy thereof by mail, addressed to each defendant *whose place of residence is stated in such affidavit*." (Emphasis added.) *Id.* We note that the affidavits at issue in *Thormeyer*, 83 Ill. at 190, and *Sedys*, 2019 IL App (2d) 180188, ¶ 4, both identified the defendant's "place of residence." Here, because the publication affidavit did not state defendant's "place of residence" explicitly because it could not be ascertained after due diligence, and defendant also could not be found after due inquiry, it is arguable that the clerk's mailing obligation under 2-206(a) was simply not triggered. See *People v. National Builders Bank of Chicago*, 10 Ill. 2d 121 (1956) ("the act refers only to a defendant's present place of residence and makes no mention of his last known address"); and *Schuster v. Elsner*, 250 Ill. App. 192, 202 (1928) (clerk not required "to send a copy of the publication notice to nonresident defendants, the place of whose residence is unknown. Such copy is required to be sent only when the residence is known and stated in the affidavit. Hence[,] it is immaterial in this case whether the clerk sent any copy of the notice or not"). We again note that defendant filed no counteraffidavit demonstrating that he could have been found on due inquiry, and he offers no suggestion as to *where* the clerk was required to mail the publication notice if, in fact, it was statutorily required to do so. We leave this issue for another day, however, because it is neither necessary for the resolution of this matter, nor was it adequately briefed by the parties on appeal.

¶ 38                                  III. CONCLUSION

¶ 39    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 40    Affirmed.